May it please the court, Brad Schaefer, appearing on behalf of the appellant with Peter Garrell. I'd like to reserve three minutes if I could. You may. In a case involving the Supremacy Clause of the United States Constitution, the normal issue is whether there is an irreconcilable conflict between federal and state law. Here, that really isn't even in dispute. There was no trial. There was no hearing, evidentiary hearing. The labor defendants never put any evidence on. We submitted in support of our motion for preliminary injunction and in response to the motions to dismiss a very extensive declaration by a CPA, David Shindell, from a large CPA firm, 32 pages, 88 paragraphs, 64 exhibits, where we have submitted every federal authority that we could find that are all uniform in saying that a mandatory charge, even if collected by an employee, is the gross income and gross receipts of the business. AB 2509 dictates to the contrary. And in dismissing our lawsuit without conducting any hearing, the federal judge comes up with three arguments. One is that there is no standing and the case is not ripe because there is not a threat of prosecution. This statute does have a criminal component. Section 354 of the California Labor Code specifically imposes criminal sanctions on all of the gratuity provisions found in the California Labor Code, which includes Section 350E, and that is where AB 2509 is in, as well as 351. Well, you have that in the law, but nobody's threatened them with prosecuting them regarding it, right? Well, that's interesting, Your Honor. Because on Exhibit A to our complaint, which is what I've referred to as the authoritative construction, the industry at the time sought consideration of what this statute actually meant. And, Your Honor, if you go to the last page of the authoritative construction, and that's found on record page 33, after they go through the analysis, this is written by Miles Locker, Chief Counsel for the California DLSC. It says this. Having considered this issue, the legislature decided how the law should be changed. It is our mandate as a labor law enforcement agency to enforce these laws as they are written, regardless of any person's view or whether they are fair to business or labor. The public should never expect any less from our division. Now. So that would mean then that your greatest injury at this point would be fear of the violation? Absolutely not, Your Honor. As we have pointed out and we have submitted in our verified complaint, we have tempered the operation of the business. They're not going full blown out because they don't know what laws to comply with. Why don't they just comply with the policy that they had? Well, Your Honor, what is that policy? The policy is that the money is supposed to go directly to the bar manager, which, first of all, from a just general operational standpoint, that really isn't how this industry operates. It's not a bar manager that's trying to sell a dance to a customer. The customer doesn't want a dance from a bar manager. They want the money. They want to get a dance from the entertainer. If, let's say, we'll issue M4 machine guns to every one of our support staff with orders to shoot to kill, if they see money being exchanged from a customer to a dancer so that it never occurs, there is no way that my clients ever know what that money is for. That money can be a chip. We're a little bit far afield here with the machine guns. The question, as I understood, is you've got a policy. Yes, Your Honor. Why not use your own policy? Because we can't control the customers. The customers want to give the money to the entertainers. And, quite frankly, we can't control the entertainers. Then who's violating? Pardon me? Who's the violator there? It's not us. And that's just what the judge said. Well, I mean, you said the judge came up with these reasons, but we've seen a lot of cases over the years that are in the same posture as you are. There's a law. Someone doesn't like the law for a good reason, a business or whatever, but there's no threat to enforce it. There's no pre-enforcement activity. There's really just nothing yet. And so all those cases tell us and instruct us that we should dismiss the complaint for lack of standing or ripeness. Why is your case different? Sure. So let's take a look at, first of all, and I just wanted to finish on the authoritative construction, because Mr. Locke here has carbon copies down here that go to the industry. These aren't blind carbon copies. And so the last one on here is all DLSE attorneys. That's a shot over the bow, a shot across the bow. They're intending to enforce this. Now, it doesn't get enforced for 20 years because the entertainers aren't employees until my client comes along and makes the dancers employees. But now what we have to do is we have to consider that in the context of Steffel versus Thompson, that as long as there's a criminal component there, we do not have to wait until prosecution. We can litigate ahead of time. We can have pre-enforcement actions. But more importantly, we have to take a look at this in the context of what the U.S. Supreme Court said in Babbitt. And in Babbitt, they say three things. Number one, is our concern imaginary? Our concern is not imaginary. Our CPA says they can't even figure out how to file tax returns because of this. Is it wholly speculative? No, it's not, and I'm going to get that. The problem with the tax return isn't going to always be there because when the tip comes, how are you going to ever know unless somebody tells you? That's the problem, Your Honor, with the question of just enforce the rule because customers are paying mandatory charges and they're paying tips. There is no way for my client to know whether a specific payment is a mandatory charge or a tip. A customer can be paying both at the same time. He can be paying just the tip. He can be paying the dance fee. We do not know and there's no way for us to know. Oh, there's a way for you to know. There's a way for you to control it. It's true you may not know, but there's a way for you to know for you to control it. There isn't, Your Honor. Labor Code Section 351 specifically prohibits us from collecting the tips. You can say just collect all the money directly, have the business collect all the money directly. We can't under the law. Labor Code Section 351. Can you collect the dance fee? Pardon me? Can you collect the dance fee? Yes. So you can segregate the dance fee. Your Honor, but you're saying impose a rule. We have a rule. If there would have been an evidentiary hearing, we could have gone over everything the club does in order to ensure this, and irrespective of that, it still happens. We can't, again, Your Honor. But when you say it happens, there's no prosecution. There's no threat of prosecution, right? Sure there is, Your Honor. What is the allegation on that point? Your Honor, again, looking at STFL, the third element is do they specifically disavow an intention of enforcing? And they have not. So under all three prongs, under STFL, we get to bring our challenge. But most importantly, Your Honor, are the PAGA cases that we have referred to, both in response to the motion to dismiss, as well as the motion to take judicial notice that this court granted last week. In those actions, which are filed on behalf of the State of California, there are claims under AB 2509. There are litigants that have, and defendants, that have suffered the wrath of lawsuits under AB 2509. Now, the State cannot come up here and argue those actions are not on behalf of the State of California. Why? Because the State made the argument in the Iskanian case that PAGA actions are on behalf of the State of California, therefore they are not subject to binding arbitration agreements of employees. And the State is riding that horse to get around last year's Supreme Court decision in EPIC systems that said that you can, in fact, impose mandatory arbitration agreements on employees. So under judicial estoppel, they can't make that argument in Iskanian and here say, oh, no, these really aren't on behalf of the State. So the State, and by the way, as we pointed out in our briefing, the State gets 75% of the penalties, the PAGA penalties, the Private Attorney General Act penalties. They get those. So those actions have been brought. I have to go back to the threat of prosecution because it has to be under Thomas the genuine threat of imminent prosecution. So I don't think that you have any prosecutions that have been no one's giving you the letter saying you will be prosecuted unless you stop this practice, right? And the other prosecutions, as you are distinguishing yourself, are different from what we have here. So what is the imminent threat that you're under? Your Honor, as Mr. Schindel points out in his declaration, if we are not able to appropriately distinguish service charges, mandatory service charges from tip income, those are criminal penalties even under the Internal Revenue Code. Those can beget penalties for the tax preparers under Circular 230. You know, this reminds me a lot of the waiter tip cases in the tax arena. And, of course, the solution there imposed by the IRS in practical sense is that there is a practical solution to segregation that then doesn't expose the employer to penalties and other problems. And you're saying, well, there's no practical solution. Your Honor, and I love that you came up with that example because that's the example I was going to give. Let's assume that AB 2509 said that any money given to a waitress is his or hers to keep. And we all know that the waitresses bring the food, get the money, take that money, and the money that are the mandatory charges of the business go to the business. There is no practical way, again, given Labor Code Section 351, that we cannot collect any portion of an employee's tips. There is no way when we're looking at a transaction, a cash transaction between a customer and a dancer, is that a dance fee, is that the mandatory charge, or is that the tip? If it's the mandatory charge, we need to jump on it and we need to get that money. We need to preclude that. Do you want to save your remaining time? Yes, Your Honor. Thank you. Good morning, Your Honor, and may it please the Court. I am Jeffrey Rich from the Office of California Attorney General, appearing on behalf of defendants. Just to pick up where we left off, it seems that, as an example, and this is not directly germane to the issues before this Court, because the issues before this Court are, number one, does the complaint allege sufficient facts to establish case or controversy, and or does it allege sufficient facts to invoke ex parte young? Because I don't think there's any dispute this complaint would be barred by the 11th Amendment, but for the operation of or application of ex parte one. But just to pick up on this practical notion, it seems to me that it would be a very simple matter of, as an example, having tickets issued to a bar customer that wants to purchase a dance and that the dancers are instructed to only take tickets that have been issued by bar management. I bring that up as a simple example that plaintiff apparently is not willing to engage in to try to rectify any problem that it sees. Plaintiff's counsel referred to the declaration of Mr. Schindel, which may have been appropriate for the motion for preliminary injunction, but not appropriate for the purpose of testing, as a facial matter, our 12B1 motion and our 12B6 motion for failure to state a claim. So whatever is said about what's in the Schindel declaration is, I believe, irrelevant to this Court's analysis, because we know we're just looking at the allegations of the complaint on their face. In regard to that, the request for judicial notice, asking for the Court to take notice of certain private attorney general actions, those actions are completely irrelevant because they're brought by a private attorney general, even if it's deemed to be the state. The state is not the defendant here. If it were, then it would be an easy case. This case is barred by the 11th Amendment. Plaintiffs sued the individual defendants in their individual capacity because of concerns about 11th Amendment and Ex parte Young. In that regard, Ex parte Young requires an allegation of an ongoing violation of federal law. This is very subtle law. We have a number of Supreme Court decisions in that regard, Verizon, Maryland Inc., Verge's Public Service Commission. This Court issued a decision in Koala v. Koshla, 931 F. 3rd, 887 Pennsite, 895, that there is a pleading requirement of an ongoing violation of federal law. So in addition to rightness and standing, we contend that Ex parte Young doesn't even apply because of the failure to make that allegation. And that fits in with the general problem here, that there's nothing here. There's no here here. As the Court knows, there is no threat of imminent prosecution. Well, and they could just enforce their own policy, right? And then they wouldn't even have that threat. Well, yes. I mean, I suppose the ticket idea is one way. We don't get into the details of solving that. No, that's not our job here, but I wanted to make that point. Another point would be if plaintiffs went and sought maybe a business consultant to come up with a business model where internal controls are in place to satisfy the business's requirement of trying to maintain payments, go here for this, these are tips for the employees, this is our revenue. No attempt has been made. Let me give you an example in terms of the credible threat of prosecution. The Steffel case that plaintiffs relies on gives an example from Younger v. Harris of what would be a clear threat of enforcement. Referring to someone that is in the action or activity of handing out handbills. That is, petitioner has alleged threats of prosecution that cannot be characterized as imaginary or speculative. He has been twice warned to stop handbilling that he claims is constitutionally protected and has been told by the police that if he again handbills at the shopping center and disobeys that warning to stop, he will likely be prosecuted. That's an example of what constitutes an imminent, credible threat of prosecution. Not even remotely here. Not the letter that has the CC of the initials of the attorneys on the bottom, the letter that he mentioned. Yeah, I mean, that is a, well, number one, that's an 18-year-old letter. Number two, why are there no enforcement actions that generated from the letter? Number three, why did plaintiffs not go to the Labor Commission and say, let's sit down and talk about how you will enforce this vis-a-vis our business? Apparently plaintiff never attempted to do that. But a letter standing by itself, how can that be a threat of prosecution? Well, a letter that says we're going to prosecute you, of course. It didn't say we're going to prosecute plaintiff. That's the problem. Now, I agree if there was a letter coming from one of my clients, from defendants, directed to this bar, of course, that could be construed as a credible threat of enforcement. But an agency that gives an opinion or advice as to how they construe and how they will enforce the law, well, that can't possibly be a threat of prosecution. The federal courts would be standing room only. There wouldn't be enough time or resources to handle all the cases if that were to be the standard. Well, it's an effort to kind of turn it into a declaratory judgment, sort of to get some advanced clearance, basically. Well, that's an advisory opinion. Correct. That's sort of what they're asking. Well, in fact, not just implicitly, the complaint expressly states language to the effect that they're asking for an advisory opinion. And we mentioned that in our brief. I believe that would be paragraphs 70 and 88, where the allegation is we're concerned about this transaction. We would like to get an opinion from the court whether it is legal. Well, I believe plaintiff should have gone to its counsel and gotten an opinion or gone to the agency. Counsel, rather than doing those two things, is coming to the district court and asking the court to get rid of AB 2509. Do you have any questions for me? No, yours not. Thank you. Thank you. The last thing in the world we're asking for is an advisory opinion. As we pointed out in our verified complaint, there are garnishments that are going on at this club in regard to the dancers, so we have to comply with federal law that makes it a difference whether something is a service charge or a tip. So then just enforce your policy. Yes, Your Honor. But as I explained to you, we can't because we do not know what money is a service charge or a tip. Well, then you'll have to figure that out, right? There must be some possibility for you doing that. It's not an impossibility. Well, Your Honor, you know, quite frankly, isn't that what an evidentiary hearing is for? You know, brother counsel sits there, puts out a bunch of hypotheticals. Isn't that how we're supposed to vet this? Not if it's for a preview of coming attractions and not something that's ready for adjudication. Well, Your Honor, this absolutely is ready for adjudication, and it's not a coming attraction because, as we've pointed out, you know, he says, you know, they should have asked for a letter, you know, they should have come to the department. That's what this is. Eighteen years ago? That's the imminent threat, a letter from 18 years ago? Your Honor, and under Babbitt, it says, do they disavow an intention of enforcing, and they have never done that. That's one of the elements of Babbitt. Mr. Garrell, if we have an evidentiary hearing, he can submit that he sent another letter to the DLSE, never got a response, never got a response. It looks like they're not too interested in moving ahead. Your Honor, again, we were the first people in the state that converted dancers to employees and therefore put at issue AB 2509. We have to comply with the law. The state law is different than the federal law. There's simply no doubt about that. This is not an advisory opinion. We have accountants that don't know what to do. We have bookkeepers dealing with garnishments that don't know what to do. We have bookkeepers who don't know, is the dance fee supposed to be part of a commission payment for the determination of overtime for the dancers under the Fair Labor Standards Act, or is that a tip under AB 2509 that is not part of the regular rate? We don't have a case to make all those determinations. We have a hypothetical, is the way you've pitched it. We don't have a case. No, Your Honor. A verified complaint saying the dancers work overtime. All of that is in the verified complaint. There are garnishments. You don't have to get too excited. I appreciate that you're enthusiastic for your client, which is a good way to be. He says they should get legal counsel. Yeah, that's me. There's no way to reconcile these. Mr. Chanel. So what do you think we should do? What do you want the court to do? Your Honor, I would want a remand, and I would want the court to enter a preliminary injunction until we get a full hearing on the merits, or at least give us an evidentiary hearing on the motion for a preliminary injunction. All right, thank you. We have your argument in mind, both counsels' argument. The case just argued is submitted. Thank you, Your Honor. Ontario Food and Beverage v. Baker, and we're adjourned for the morning. Thank you. Thank you. All rise.
judges: Farris, McKeown, Kendall